Argued January 21, decided February 23, rehearing denied April 27, 1909,

## McINNIS v. BUCHANAN.

[99 Pac. 929.]

CONTRACTS — BUILDING CONTRACTS — ACTIONS — COMPLAINTS — SUFFICIENCY.

1. Under Section 88, B. & C. Comp., providing that, in an action on a contract, the pleading may state generally that the party duly performed certain work, a complaint, in an action on a building contract alleging that the contractor obtained a certificate from the architect, and that the contractor had performed each and every thing under the contract to be performed by him, sufficiently alleged the production and presentation of the architect's certificate, which was made a condition precedent to the right to demand payment.

CONTRACTS—CONDITIONS—WAIVER OF PERFORMANCE.

2. Where an owner refused to pay the balance claimed by the contractor on other grounds than the nonpresentation of the architect's certificate, or failure to complete the building, and the architect issued a certificate showing that a specified sum was due the contractor, a part of which the owner paid, and the parties agreed that the only matter in dispute was the contractor's right to the balance, the owner waived the production and presentation of the architect's certificate.

CONTRACTS—BUILDING CONTRACTS—CONSTRUCTION—REIMBURSEMENT OF EXPENDITURES.

3. Where a building contract stipulated that the owner, on the architect certifying to the refusal or neglect of the contractor to furnish materials, might do so and deduct the cost thereof from the contract price, and the architect ordered cement needed by a subcontractor, the price of which was charged to the owner, who voluntarily paid therefor, and the contractor was never asked by the architect to furnish any cement, and it was understood that the owner was to furnish the same, the contractor did not refuse or neglect to furnish cement, and the owner could not charge the price thereof to him.

CONTRACTS—BUILDING CONTRACTS—CONSTRUCTION—REIMBURSEMENT OF EXPENDITURES.

4. The situation did not raise an implied assumpsit on the part of the contractor to pay the reasonable value of the cement as furnished at his special instance and request.

Mechanic's Liens—Attorneys' Fees—Recovery.
5. In an action to foreclose a mechanic's lien, plaintiff, who alleged and proved by competent uncontradicted testimony that $250 was a reasonable allowance for attorney's fees, was entitled to the full amount thereof.

From Multnomah: Arthur L. Frazer, Judge.

This is a suit by Alex. McInnis and E. G. Reed, partners doing business under the firm name of McInnis & Reed, against D. E. Buchanan to foreclose a mechanic's lien upon defendant's building and lot. From a decree in favor of plaintiffs, both parties appeal; the defendant being designated herein as appellant.

Statement by Mr. Justice Slater.

Plaintiffs entered into a written contract with the defendant to construct for him, at an agreed price of $53,294, a six-story brick building upon certain property owned by him in the City of Portland. The contract as executed required the plaintiffs to provide all materials, and to perform all work included in the builders' work, except plumbing and heating. The building was to be erected under the direction of Emil Schacht as architect and to his satisfaction. Section 5 of the contract contained this clause: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architect, the 'owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract"— and also this: "The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract, in such manner as not to delay its progress," etc. The building was to be com-

pleted on April 1, 1907, and the final payments to be
made within 30 days thereafter, and all payments were
to become due when certificates for the same were
issued.   Plaintiffs sublet the contract for the construc-
tion of all brick and concrete work to Elrath & Son, who
were to provide the materials, and to perform all the
work, as shown on the plans and specifications.   After
the completion of the building to the satisfaction of the
architect, and after the issuance by him of a certificate
to the effect that the plaintiffs were entitled to the final
payment, amounting to $10,194, a dispute arose between
the original contractors and the owner as to whether
the latter was entitled to a credit on the final payment
to the amount of $2,579.70, claimed by him as the
alleged reasonable value of cement used in the construc-
tion of the building, and which was paid for by him.
The credit being denied by the plaintiff, the defendant
refused payment of that amount of the total called for
by the final certificate; and this suit was brought by
the plaintiffs as original contractors to foreclose a
mechanic's lien impressed by them upon the defendant's
building and lot in order to secure said balance, and to
recover $1 paid for filing the lien, and $250 as reason-
able attorney's fees.

In the amended complaint the cause of suit is stated
in two forms.   The first is based upon a general aver-
ment to the effect that plaintiffs contracted with defend-
ant to furnish certain materials and to perform certain
labor for the defendant, to be used, and which were
used, in the construction of said building for the con-
tract price above stated; that they had performed the
contract, had obtained a certificate from the architect
to that effect, and, after crediting all payments made,
there is due the sum of $2,579.70.   Then follows the
usual averments of the filing of the lien notice, which
is set out in full, and which is sought to be foreclosed.
The second statement of the cause of suit is substan-

tially the same as the first, but consists of a more detailed statement of the terms of the contract, with an averment that the architect, in reducing the terms of the agreement to writing, by mistake, inadvertence, and oversight omitted to include cement as a part of the material excepted from the general obligation to furnish all materials, imposed upon plaintiffs by the terms of the written contract, which cement it is alleged the defendant had agreed to furnish. The reformation of the contract by inserting the words "and cement" in the exception is asked, and also that when reformed it be enforced by judgment for the several amounts demanded and for a foreclosure of the lien.

By his answer defendant admits the making of a contract with plaintiffs for the construction of the building for the price stated, but denies the alleged mistake, and avers that, as written, the contract evidences the true agreement made. He denies that plaintiffs performed all of the contract, but avers that they failed to furnish cement. As an affirmative answer to the first statement of the cause of suit, it is alleged that "the defendant has furnished and paid for cement of the reasonable value of $2,579.70, which cement was used by the plaintiffs upon said building, and which cement under said contract the plaintiffs were to pay for, or to allow the cost thereof to be deducted from said agreed contract price"; and to the second that, "in violation of the covenants and conditions of said contract, plaintiffs failed to furnish, provide, and pay for the necessary cement going into the construction of the building, and that defendant has paid for cement of the reasonable value of $2,579.70, which was actually used by plaintiffs in and about the construction of said building, and which cement plaintiffs covenanted and agreed to and with defendant to furnish and pay for."

The reply put at issue the new matter of the answer, affirmatively set forth in section 5 of the contract given

above, besides other parts thereof not material to be stated here, and alleged that during the construction of the building neither the architect nor the owner notified the plaintiffs to furnish cement, but the owner furnished and paid for all cement and gave the contractors no notice or opportunity to furnish or pay for it. Upon a trial being had, the court found against plaintiffs upon the issue as to a mistake in the contract, but found in their favor upon the other issues and for the amount claimed to be due on the contract, and allowed $1 for filing the lien and $200 as attorney's fees. A decree was accordingly entered foreclosing the lien, from which both parties have appealed.

MODIFIED AND AFFIRMED: REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Williams, Wood & Linthicum,* with an oral argument by *Mr. George H. Williams.*

For respondent there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. An objection is now presented for the first time that the complaint is fatally defective, because it is not stated therein that the alleged final certificate given by the architect to plaintiffs was never presented to the defendant, or that he had any knowledge of its existence before the commencement of the suit. The cases of *Weeks* v. *O'Brien,* 141 N. Y. 199 (36 N. E. 185) and *Coey* v. *Lehman,* 79 Ill. 173, 176, are cited in support of this contention, but neither of them, when applied to the facts, go so far as claimed by counsel. The former case is put upon the ground that the complaint neither averred that the certificate of the architect had been procured, nor that it was unreasonably withheld, while there was also a distinct issue in the pleadings whether the building had been completed according to

the contract, and payment was refused on that ground. In the latter case the appellees failed to procure the acceptance of the work by the architect and his certificate, and the case shows that the work done upon the building, and the materials furnished were not satisfactory to the architect, and for that reason he had not accepted the work in writing, nor had he given a certificate for the balance due. It is only by the terms of the contract that plaintiffs are required to obtain a certificate, and there is a particular allegation that they "obtained a certificate from the architect to the effect that they had performed work and furnished material at the contract price of $53,294," but there is also a general allegation in the complaint that plaintiffs duly performed each and everything under said contract to be performed by them. This we think, under Section 88, B. & C. Comp., is quite sufficient, even if presentation of the certificate, as well as its procurement, is by the contract a condition precedent to the right of payment.

2. If it were held otherwise, we are of the opinion that the pleadings show a waiver of the presentation of the certificate. The defendants refused to pay the balancè claimed by the plaintiffs to be due, not because of the non-presentation of the certificate, or because of any failure to complete the building, or on account of quality of material, but for other reasons. Moreover, the certificate was issued May 28th, showing $10,194 to be due, but part payment of $8,887.10 was made by defendant on June 1st, and is acknowledged by plaintiffs in their statement of the account in the complaint; and the right to recover the balance is, by the express stipulation, the only matter in dispute. The only inference deducible from the facts averred is either that defendant knew from the architect that the certificate had been issued, or that, if he

did not know that fact, he treated its presentation of no consequence and waived its production.

3. The remaining contention of the parties is mainly confined to the question of what the terms of the agreement were in fact. On the one hand, it is urged by plaintiffs that defendant had agreed to furnish and pay for the cement; and for that reason the written contract does not, through excusable inadvertence and mistake, express the minds of the parties, and should therefore be reformed; while the defendant insists that plaintiffs were to furnish all materials, and that there was no mistake in reducing the agreement to writing. We find it unnecessary, however, to determine this question.

Assuming that the terms of the contract are as the defendant has contended, and that the obligation was upon plaintiffs to furnish all materials, yet from the averments of the answer and the evidence we are unable to see how defendant is entitled, as against plaintiffs' demand for the balance of the contract price, to an offset, counterclaim, or credit to the amount of the reasonable value of cement furnished by him to a third person, although used in the construction of the building. It will be observed that defendant has first pleaded his right to a credit, not as a counterclaim or offset, but in effect as a payment under the terms of the contract, in substance that he furnished and paid for the cement and its value, and that it was used by the plaintiffs in the building, concluding with these words: "Which cement under said contract the plaintiffs were to pay for, or to allow the cost thereof to be deducted from said agreed price." The contract referred to is not a special contract expressly made, or arising by implication from the facts transpiring at the time the material was furnished, for it is not averred that it was furnished at the instance or request of plaintiffs, but

it is the original contract, and to that we must look to determine defendant's rights. By section 5 of the contract, in part above quoted in the statement of facts, his right to furnish material and charge the value thereof to the plaintiffs is conditional; that is, upon a refusal or neglect on their part to supply a sufficiency of material of proper quality, and then only upon a certificate to that effect by the architect, and after three days' written notice to them to provide such material. From the evidence it clearly appears that, when bidding for the contract to construct this building, plaintiffs entertained an honest belief, formed from their construction of the specifications furnished by defendant's architect, that they would not be required to furnish cement. They both testify that they did not include, in their estimate for their bid, anything for cement. The contract was executed by them without hearing it read or reading it themselves. It is upon a printed form usually used by architects for such purposes, the few blank places therein being filled by the architect. After the execution of the contract plaintiffs applied to Emil Schacht for a copy of it, and upon reading the copy furnished them, they observed that it required them to "provide all materials," except for "plumbing and heating." Immediately they returned and called Schacht's attention to an omission of the words "and cement" from the exception to "provide all materials." He admitted that there was an error in that respect, and wrote those words into their copy. The original contract was not then in Schacht's possession, and was not changed, nor was defendant ever informed of the error claimed to exist, nor of the act of the architect in changing plaintiffs' copy. Plaintiffs sublet the brick and concrete work to Elrath & Son, who were to "provide all the materials and perform all the work included in * * brickwork, concrete, etc., * * as shown on the

drawings and described in the specifications prepared by Emil Schacht, architect."

4. Prior to execution of the original contract by plaintiffs Schacht suggested to his principal that it would be advisable for him to secure in advance sufficient cement with which to construct his building, for the reason that there might be a scarcity of that material. Defendant admits in his testimony that this took place, and that in reply he said: "I told him I thought it would be a good idea, but I never authorized him to charge it to me." Nevertheless Schacht did engage or secure cement in advance, and J. R. McCraken, one of the dealers who furnished it, says that he understood it was engaged on the credit of Buchanan, and was to be charged to him. Schacht says that he understood all the time that Buchanan was to furnish the cement; that he so construed the specifications, but said nothing to Buchanan about that matter. We refer to these matters to show the attitude of the respective parties toward each other, and to aid us in drawing the proper legal conclusions from the circumstances immediately surrounding the furnishing and use of the cement. Elrath & Son were constructing the building under their contract with plaintiffs, and under the supervision of Schacht as architect. The latter testifies that when cement was needed, the contractors (evidently meaning Elrath & Son) usually notified him, when he would telephone to the dealer to send up to Buchanan's building so much cement, usually 15 barrels at a load. When delivered, it was receipted for by Elrath & Son, who used it in the work they had contracted to do. Each of the plaintiffs testified that he was never asked by the defendant or by Schacht to furnish any cement, and that he never personally ordered any. The cement when delivered was charged to the defendant, and bills therefor were rendered to Schacht, who examined them;

and, being found correct, they were subsequently paid by the defendant voluntarily. From this it clearly appears that there was no refusal or neglect by plaintiffs to supply a sufficient quantity of material of proper quality within the express terms of the written contract, although not reformed, but construed as the defendant has contended it should be construed. Hence the defendant was not entitled to furnish cement to the subcontractors and to charge the price thereof to plaintiffs. Nor are the surrounding circumstances such as to raise an implied assumpsit on the part of plaintiffs to pay the reasonable value thereof as furnished at their special instance or request: *Walker* v. *Newton*, 53 Wis. 336 (10 N. W. 436). In other words, there is no privity of contract, express or implied, shown to exist between the defendant and plaintiffs respecting the furnishing and use of the cement, and for this reason the latter are not legally bound to pay the defendant therefor.

5. Plaintiffs have appealed because of an allowance of but $200 by the lower court for attorney's fees, whereas they alleged and sustained the averment, by competent uncontradicted testimony that $250 is a reasonable allowance for that purpose. Under the rule heretofore announced in *Wright* v. *Conservative Inv. Co.* 49 Or. 177 (89 Pac. 387), plaintiffs are entitled to recover the full amount alleged and established by uncontroverted testimony. In this respect it is necessary that the decree be modified so as to allow $250 as attorney's fees, but otherwise it is affirmed.

Modified and Affirmed.